#4
Fee Paid
1546
no reward

Joelle Barozzini, Ph.D.

28 Morningside Drive
Greensburg, PA 15601
724.396.9129
jmbarozzini@gmail.com

## UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOELLE BAROZZINI

     PLAINTIFF,

vs

WESTMORELAND COUNTY,
GREENE COUNTY,
JAMES LAZAR,
DOES 1-20,
     Defendant

Case No.: Number 2:23-cv-1389

**CIVIL RIGHTS VIOLATIONS**

**42 U.S.C. SECTION 1983, 1985**

**COMPENSATORY RELIEF**

**DECLARATORY RELIEF**

**INJUNCTIVE RELIEF**

FILED

AUG -3 2023

CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

## A. <u>INTRODUCTION</u>

1. On or around August 6, 2021, Joelle Barozzini, herein referred to as PLAINTIFF, was coerced under duress and threats to plead guilty to misdemeanor counts of corruption of a minor and child endangerment.

2. The actions of James Lazar, the Prosecutor for Greene County, Pennsylvania, were characterized by the use of deceptive and unethical legal tactics, which compelled PLAINTIFF to accept an unexpected and spontaneous unconscionable plea agreement.

3. This coercive maneuver was executed in an ambush-like manner, approximately five minutes before a scheduled criminal hearing, during which PLAINTIFF was anticipating acceptance of a completely different plea agreement.

CIVIL RIGHTS VIOLATIONS 42 U.S.C. SECTION 1983, 1985 COMPENSATORY RELIEFDECLARATORY RELIEFINJUNCTIVE RELIEF 1

4. PLAINTIFF was denied fair notice, and the process employed to obtain the plea agreement was an unethical ambush, perpetuated while she was already under continual scrutiny and media pressure (including salacious allegations), subjecting her and her children to public shame based on unfounded and alleged allegations (EXHIBIT 1).

5. The criminal allegations leading to the investigation against PLAINTIFF emerged after Cory Kuntz, the accuser, was arrested for allegedly administering a date rape drug and assaulting a two-year-old child, who was under his supervision and the child of his live-in girlfriend.

6. Subsequently, when Kuntz was unable to secure $30,000 for his bail, he maliciously redirected his actions, falsely accusing PLAINTIFF of rape and in a future hearing, even accusing PLAINTIFF of raping him 500 occasions, as a means to benefit his own plea agreement.

7. Detective Swank of the Greensburg Police Department conducted a prejudiced and one-sided investigation that portrayed PLAINTIFF in an unjustly negative light, making her appear guilty of baseless and outrageous allegations.

8. During this investigation, alleged witnesses were manipulated and coached into providing false affidavits, while exculpatory evidence was deliberately destroyed on the instruction of a Greene County CYS employee (EXHIBIT 2) and with the complicity of Westmoreland County prosecutor, Jim Lazar, who seemed determined to "finish off" PLAINTIFF as a misguided tribute to the deceased Detective Swank.

9. These actions were wholly biased and prejudiced against PLAINTIFF.

10. PLAINTIFF was not made aware of the destroyed exculpatory evidence, until on or around June 24, 2023; two years after she accepted her plea agreement when she received discovery for this civil suit

11. PLAINTIFF asserts that all DEFENDANTS in this instant matter and other involved parties, acting individually and collectively, conspired to deprive her of secured and protected rights.

12. James Lazar, with clear intent and conscious indifference, by his actions and omissions, mentioned below, knowingly violated PLAINTIFF'S due process rights while acting under the color of law and authority.

13. The investigation process and the acquisition of the plea agreement flagrantly violated PLAINTIFF'S procedural and substantive due process rights by using sham law techniques in the execution of the changed plea agreement.

CIVIL RIGHTS VIOLATIONS 42 U.S.C. SECTION 1983, 1985 COMPENSATORY RELIEFDECLARATORY RELIEFINJUNCTIVE RELIEF 2

14. As a result, PLAINTIFF has endured significant defamation, financial burdens, and emotional distress, entitling her to seek appropriate relief and compensation for the injuries inflicted upon her.

## B. JURISDICTION AND VENUE

15. This Court possesses jurisdiction over this matter based on Federal Question jurisdiction, as provided by 28 U.S.C. Section 1331, encompassing claims arising under 42 U.S.C. 1983 and 1985, as well as the Fourth, Fifth, Ninth, and Fourteenth Amendments to the United States Constitution.

16. Furthermore, this Court has jurisdiction under 28 U.S.C. Sections 1343, which pertains to Civil Rights cases, and 2201-02, granting authority for declaratory relief.

17. Additionally, this Court possesses supplemental jurisdiction as per 28 U.S.C. Section 1367(a) with regard to the remaining counts that arise under the Pennsylvania State Constitution and State Laws, stemming from the same set of operative facts.

18. The facts constituting the basis of this claim establish its origin under the United States Constitution and 42 U.S.C. Section 1983 and 1985.

19. Venue is proper within this district in accordance with 28 U.S.C. Section 1391(b) since all events leading to this complaint occurred within this locational jurisdiction.

## C. PARTIES

20. Joelle Barozzini, hereinafter referred to as PLAINTIFF, is one of the People of the Commonwealth of Pennsylvania and asserts all of her RIGHTS as a Natural Person. PLAINTIFF also resides in Pennsylvania at all times relevant to this action.

21. DEFENDANT, Westmoreland County is a political subdivision of the COMMONWEALTH of Pennsylvania, hereinafter referred to as WESTMORELAND. WESTMORELAND is being sued as a Person.

22. DEFENDANT Greene County, hereinafter referred to as GREENE, is a political subdivision of the Commonwealth of Pennsylvania. GREENE is being sued as a Person.

CIVIL RIGHTS VIOLATIONS 42 U.S.C. SECTION 1983, 1985 COMPENSATORY RELIEFDECLARATORY RELIEFINJUNCTIVE RELIEF 3

23. DEFENDANT James Lazar, hereinafter, referred to as LAZAR, is an employee of WESTMORELAND and has sworn and subscribed a solemn oath to both state and federal Constitutions. LAZAR has qualified immunity in his official capacity and is therefore being sued in his private capacity for consciously and deliberately indifferent to PLAINTIFF'S secured, protected, and guaranteed Rights.

## D. FACTUAL ALLEGATION

24. In September 2006, PLAINTIFF, an experienced mental health professional, was employed as a recruitment and certification specialist at Pressley Ridge, having previously worked in foster care until 2017.

25. Prior to her tenure at Pressley Ridge, PLAINTIFF was certified as a therapeutic treatment foster home by Northwestern Human Services, NHS, and had been actively involved in caring for foster children.

26. During her service, PLAINTIFF conducted numerous foster parent classes on providing care to children who had experienced sexual abuse.

27. PLAINTIFF was not only an advocate for displaced children but also actively participated as a community activist addressing drug-related issues in her area,

28. PLAINTIFF delivered public testimony, in front of Pennsylvania's Lieutenant Governor in 2016 at the PA Drug and Alcohol Task Force, which strongly criticized the Greensburg police for their dangerous and ineffective methods when handling crisis situations in the community (HR590). Subsequently, PLAINTIFF believes she faced retaliation due to this testimony. This is a matter of public record.

29. On August 12, 2009, Cory Kuntz became a therapeutic treatment foster child under the care of PLAINTIFF and became a part of her family.

30. PLAINTIFF diligently and meticulously attended all professional appointments concerning Cory and exceeded her responsibilities to ensure his emotional development in the best possible manner including extensive documentation of required matters.

31. PLAINTIFF provided oversight and documented the progress of Cory, who required extensive care due to his troubled past and displacement history.

CIVIL RIGHTS VIOLATIONS 42 U.S.C. SECTION 1983, 1985 COMPENSATORY RELIEFDECLARATORY RELIEFINJUNCTIVE RELIEF 4

32. Cory's entry into PLAINTIFF'S care was under the guidelines of treatment foster care, signifying his mental health diagnosis, which included Oppositional Defiant Disorder, Bipolar Disorder, and Intermittent Explosive Disorder.

33. On November 14, 2016, Cory was arrested and incarcerated for aggravated assault of a two-year-old under his care, facing charges of "aggravated assault of a victim less than 6 years of age and endangering the welfare of a minor (EXHIBIT 3)."

34. The two-year-old involved in Cory's case suffered from bruises on the child's head, torso, back, arms, and legs and had traces of methylenedioxyamphetamine, or MDA, a hallucinogenic stimulant that is closely related to ecstasy.

35. Cory's girlfriend, Courtney Howell, contacted PLAINTIFF on his behalf, seeking to borrow $30,000 for bail through written Facebook messenger correspondence (EXHIBIT 4).

36. PLAINTIFF refused to provide bail money to Cory, as indicated in written correspondence. (EXHIBIT 4)

37. Shortly after PLAINTIFF refused to offer bail money, Cory falsely accused her of raping him, using this baseless accusation as an unconventional defense to evade accountability, resulting in criminal charges of rape of a minor and institutional rape against PLAINTIFF and also struck a deal with the prosecutor to avoid severe accountability for his offense.

38. An arrest warrant was filed against PLAINTIFF on charges of rape, institutional sexual assault, corruption of minors, and endangering the welfare of children.

39. PLAINTIFF was criminally charged with rape and institutional rape of a minor based on Cory's false accusations (EXHIBIT 5).

40. Throughout the entire period of Cory's accusations, PLAINTIFF had documentation of medical issues, including severe vaginal bleeding and discharge, necessitating medical treatment and multiple surgeries, including a hysterectomy.

41. PLAINTIFF had Vaginal ablation, on 10/5/09, and major surgery on 1/13/2010, which required a JP drainage tube to be placed, that hung around the PLAINTIFF'S neck from 1/13/2010 until the JP tube was removed on 2/11/2010.

42. PLAINTIFF had another major surgery, stomach reduction, from excessive skin from weight loss, and also had a hysterectomy on 9/18/2013 after her medical visit on 5/29/2013 where PLAINTIFF reported bleeding daily to her doctor.

43. The medical records show over 24 documented visits to medical professionals, reporting severe bleeding and discharge during the time when Cory alleged the abuse occurred.

44. Cory claimed during a preliminary hearing on July 10, 2018, that PLAINTIFF first asked him to perform oral sex between September and October 2009, during which the medical records indicate her ongoing medical condition (severe vaginal bleeding).

45. During the same preliminary hearing, Cory described in detail a fictitious incident of sexual abuse and a fictitious encounter of Cory's "first" sexual abuse incident. Cory never once describes vaginal bleeding or any mention of blood

46. Cory repeatedly alleged during the preliminary hearing that he and PLAINTIFF engaged in sexual acts numerous times a week, approximately 500 times, without ever mentioning or describing any sight of blood or vaginal bleeding, which contradicts PLAINTIFF'S medical condition during that period.

47. Of importance, during this time frame when Cory reports the rapes occurred, the PLAINTIFF had 3 biological children, (two sons, 3 and 5) and a 16-year-old daughter who also, had friends over all the time, had multiple treatment foster children placed in her home. She was married. She worked full-time at Pressley Ridge who would report she worked well over 40 hours per week. PLAINTIFF was also attending Seton Hill University as she was in the process of obtaining her MBA, she and her husband at the time, Adam started an independent record label for hip-hop artists, and she volunteered for Sage's Army, to help people that struggled to find placement with addiction.

48. Despite the busy schedule of the PLAINTIFF and the numerous people in their home, Cory still insisted that the PLAINTIFF raped him over 500 times, with no witnesses, physical evidence, or recollection of any "details" past the "first" rape.

49. Notably, there is no documented mention of Cory ever reporting 500 instances of rape; this only arose during cross-examination at the probable cause hearing by PLAINTIFF'S defense attorney, William McCabe

CIVIL RIGHTS VIOLATIONS 42 U.S.C. SECTION 1983, 1985 COMPENSATORY RELIEFDECLARATORY RELIEFINJUNCTIVE RELIEF 6

50. The passing of Detective Swank during the investigation left certain matters unresolved, leading LAZAR to extend a plea offer, seeking to drop all salacious charges.

51. PLAINTIFF countered this offer by requesting the exclusion of the corruption of minor charges, which Lazar declined, claiming it was in honor of Detective Swank.

52. LAZAR made these remarks in the presence of the PLAINTIFF'S defense attorney, and the sitting judge.

53. LAZAR changed the plea agreement without notifying PLAINTIFF or her counsel, this sudden and unexpected change in the plea agreement's terms occurred just five minutes before the hearing, leaving the PLAINTIFF with no fair notice or process, and she was forced to accept the revised agreement under duress and fear.

54. The discovery process revealed various truths that could exonerate PLAINTIFF, which was ignored, and also undisclosed by LAZAR and Detective Swank, including discrepancies in factual information and false statements regarding PLAINTIFF'S visits with Cory from GREENE County CYS caseworkers.

55. PLAINTIFF had comprehensive documentation of numerous regular visits from all GREENE County CYS caseworkers that directly refute the false allegations.

56. Det. Swank interviewed PLAINTIFF'S former foster children prior to Cory's placement in the PLAINTIFF'S home, during Cory's placement, and after Cory's placement in PLAINTIFF'S home, and 100% of the children report PLAINTIFF is innocent and no abuse occurred in the home.

57. Det. Swank interviewed PLAINTIFF'S husband at the time, and 16-year-old daughter at the time, both reported PLAINTIFF'S innocence, but LAZAR or Det, Swank did not interview any Mental Health Professionals that worked directly with Cory in the PLAINTIFF'S home.

58. PLAINTIFF'S due process rights were violated, as LAZAR withheld the information of exculpatory evidence that was shredded by Michelle Hysell, hired by GREENE County CYS, which would have further rebutted false caseworker statements and provided documentation of visits, safety checks, psychological reports, therapist notes, and other supporting evidence of innocence (again refer to EXHIBIT 2)

59. There were no credible witnesses to corroborate the 500 alleged rapes by Cory, and no mental health professionals or foster care agency professionals interviewed during the relevant time which would have addressed Cory's mental instability and credibility.

CIVIL RIGHTS VIOLATIONS 42 U.S.C. SECTION 1983, 1985 COMPENSATORY RELIEFDECLARATORY RELIEFINJUNCTIVE RELIEF 7

60. This failure to include the PLAINTIFF'S perspective and the refusal to interview her with legal representation demonstrate a lack of due diligence on the part of the Greensburg Police. Such omissions and denials undermine the integrity of the investigation, raise concerns about bias, and further support the PLAINTIFF'S claims of deprivation of rights and a lack of fair treatment throughout the legal process.

61. Throughout the entire duration of PLAINTIFF'S ordeal, spanning 4 years, 7 months, and 6 days (1664 days), not a single person was interviewed to explore the PLAINTIFF'S innocence, including the PLAINTIFF herself. This glaring oversight raises serious doubts about the objectivity and thoroughness of the investigation conducted by Det. Swank and LAZAR. The failure to even consider PLAINTIFF'S perspective and evidence that could have supported her innocence further highlights the unjust treatment she endured.

62. Det. Swank and LAZAR were notified multiple times of the numerous mental health professionals that were closely involved with Cory and PLAINTIFF'S interactions and PLAINTIFF, and her defense team provided Det. Swank and LAZAR with contact information to contact these professionals as demonstrated in TWO examples of many in EXHIBIT 6 and EXHIBIT 7.

63. Private investigators hired by PLAINTIFF interviewed Ariel Berry and Kristen Cook, both of whom independently corroborated PLAINTIFF'S innocence. However, their statements were alienated and not investigated by Detective Swank. A transcription of Ariel Berry's interview with the Private Investigator can be provided. (EXHIBIT 8).

64. Despite the serious nature of the allegations against PLAINTIFF and the potential consequences she faced, Det. Swank and LAZAR failed to conduct a comprehensive and unbiased investigation. Notably, the police never questioned PLAINTIFF to discuss the allegations or present evidence to counter Cory's untruths. This omission is particularly concerning given the extensive documentation and witnesses that could have supported PLAINTIFF'S innocence.

65. Detective Swank's premature passing further complicated the investigation and compromised due process.

66. LAZAR committed Brady violations by withholding information and additionally, he was aware of the destruction of exculpatory evidence and participating in a bad faith prosecution against PLAINTIFF.

67. LAZAR'S reckless disregard for the truth contributed to PLAINTIFF'S bad faith conviction.

68. At all relevant times, PLAINTIFF acted in good faith and strictly adhered to all codes and laws governing health and welfare statutes in the Commonwealth of Pennsylvania concerning her foster care responsibilities.

69. PLAINTIFF had direct knowledge that all documentation and records concerning Cory's placement were sent to GREENE County CYS, as required by regulations, and no knowledge of their destruction by the direction of GREENE County CYS.

70. On May 4, 2021, Cory pleaded guilty to a felony count of aggravated assault of a child and a misdemeanor offense of child endangerment.

71. WESTMORELAND County Common Pleas Court Judge Christopher Feliciani ordered Cory to serve a mitigated 10-year probation sentence that included 18 months on house arrest. As part of Cory's plea bargain, prosecutors waived a mandatory five-year prison sentence.

72. The rush to judgment and incomplete investigation disregarded favorable evidence and led to the conviction of PLAINTIFF without due diligence.

73. The failure of the Greensburg Police and LAZAR to conduct a comprehensive and unbiased investigation, denying the PLAINTIFF a fair chance to present her innocence and disregarding critical evidence that could have exonerated her. Such a deficiency in the investigation process calls into question the validity of the charges brought against PLAINTIFF and supports her claims of deprivation of rights and due process violations throughout this entire ordeal.

74. These insufficient processes and destruction of exculpatory evidence by DEFENDANTS violated PLAINTIFF'S substantive and procedural Due Process Protections, infringing upon her Rights as a direct result of practices, policies, customs, protocol, or lack thereof by DEFENDANTS

## E. HISTORICAL BEHAVIOR AND PLACEMENT OF THE ACCUSER

75. As a troubled young man, Cory Kuntz exhibited a consistent refusal to accept accountability, resulting in a series of documented poor choices and behavioral issues.

76. Cory was placed in multiple foster homes during his childhood and spent nearly a year in an outdoor wilderness program for troubled youth, which ultimately discharged him unsuccessfully.

CIVIL RIGHTS VIOLATIONS 42 U.S.C. SECTION 1983, 1985 COMPENSATORY RELIEFDECLARATORY RELIEFINJUNCTIVE RELIEF 9

77. Due to severe mental illness, Cory required therapeutic foster care placement, necessitating a medical doctor's recommendation, and his placement was covered by medical insurance.

78. Cory actively received treatment for Oppositional Defiant Disorder, Bipolar Disorder, Intermittent Explosive Disorder, and Adjustment Disorder.

79. Treatment foster care regulations mandated constant 24/7 supervision, prohibiting the child from being left home alone or going out unsupervised.

80. Cory's treatment foster care included numerous mandatory visits and sessions, such as weekly one-on-one in-home therapy from a Pressley Ridge Master's level therapist, weekly visits from a Pressley Ridge Treatment Coordinator, and regular one-on-one outings in the community with a Pressley Ridge Community Integration Aide (CIA).

81. Additionally, Cory attended monthly medication management appointments with Pressley Ridge's psychiatrist and had mandatory psychological evaluations every 120 days with a clinical psychologist, Dr. Scott Roberts. Insurance meetings to approve his placement occurred every 120 days, involving his entire treatment team.

82. All meetings and outcomes were documented and signed off by Cory and his treatment team, with the records maintained by Pressley Ridge and PLAINTIFF.

83. During his stay with PLAINTIFF, Cory returned from a visit to his biological mother's home with marker writings on his face, indicating inappropriate behavior (underage alcohol consumption) during the visit.

84. Cory stole PLAINTIFF'S ATM card and $200.00 from her bank account, prompting police involvement, though charges were not immediately pressed.

85. On a separate occasion, Cory stole PLAINTIFF'S engagement ring and pawned it, leading to his arrest because PLAINTIFF notified officials.

86. Cory exhibited severe behavioral issues at school, involving truancy and destruction of school property.

87. Cory engaged in hacking activities, corrupting PLAINTIFF'S work computer and her personal computer, using her identity without authorization, and damaging one of her computer screens.

88. The courts required Cory to attend men's anger management and undergo drug testing and individual counseling at Sunrise Counseling due to the severity of his behavior.

CIVIL RIGHTS VIOLATIONS 42 U.S.C. SECTION 1983, 1985 COMPENSATORY RELIEFDECLARATORY RELIEFINJUNCTIVE RELIEF 10

89. Cory was discharged from the Navy due to fraudulent entry and deliberate misrepresentation of his mental health condition.

90. Documentation from Pressley Ridge and PLAINTIFF reported incidents of physical abuse by Cory towards PLAINTIFF, who sought assistance in managing his increasingly negative behaviors.

91. Cory falsely claimed to have cancer, which was a blatant and malicious lie as he was receiving regular receiving medical treatment for his Celiac Disease while in PLAINTIFF'S care.

92. Cory dropped out of several educational programs, including the Triangle Tech Carpentry program, EMT classes, and Pittsburgh Technical Institute Culinary School, exhibiting a pattern of inconsistent and irrational behavior.

93. A private investigator hired by the PLAINTIFF'S defense team interviewed Kristen Cook, Cory's on-and-off girlfriend from 2009-2014, by the mother of the child Cory abused and pled guilty to, revealing that Cory was using cocaine (again see EXHIBIT 8).

94. On May 4, 2021, Cory pleaded guilty to a felony count of aggravated assault of a child and a misdemeanor offense of child endangerment.

## DUE PROCESS VIOLATIONS

95. Subsequently, when PLAINTIFF became the misdirected focus of the investigation, several egregious and unlawful actions ensued, violating due process clauses protected by the 5th and 14th Amendments of the U.S. Constitution against her.

96. During the investigation led by Detective Swank and LAZAR, many prejudicial, presumptuous, and erroneous processes were executed by multiple actors and DEFENDANTS.

97. Trooper Reinhart, a close friend of Detective Swank, participated in transporting Cory from Waynesburg to Greensburg, despite this not being a common procedure for State Troopers. Trooper Reinhart's personal relationship with Cory raises concerns about impartiality.

98. Despite an abundance of documented evidence directly connected to the prosecution of PLAINTIFF, Greensburg Police, Det. Swank, and LAZAR, neglected, and ignored these genuine, material facts of evidence.

99. Det. Swank interviewed individuals who had no relevance to the case, neglecting to question the mental health professionals who worked directly with Cory during his stay with PLAINTIFF, despite the PLAINTIFF and her defense team's offer to facilitate these interviews. This is a 6th Amendment violation *(to have a compulsory process for obtaining witnesses in his [her] favor.)*

100. Det. Swank interviewed a Mental Health worker who worked with Cory prior to Cory even being placed at the PLAINTIFF'S home, and a foster parent that never had Cory placed in their home (EXHIBIT 9).

101. Cory's tentative plea agreement in his arrest case created a motive for him to generate false accusations against PLAINTIFF to negotiate a lower sentence, which he ultimately did.

102. A search warrant was executed in PLAINTIFF'S home, resulting in the seizure of personal items, including family pictures and Pressley Ridge files, and eight disposable cameras which were never developed, but returned to PLAINTIFF five years later after the bad faith plea agreement was made.

103. Greensburg Police and LAZAR were presented with ten-character affidavits on behalf of PLAINTIFF and a detailed assessment by Cory's psychologist, providing evidence supporting PLAINTIFF'S innocence.

104. Relevant text messages discrediting Todd Passino's (former foster child under PLAINTIFF'S supervision) statements were withheld from discovery, further indicating prejudicial conduct.

105. PLAINTIFF underwent multiple medically documented surgeries and treatments, including vaginal ablation, stomach reduction surgery JP drainage tube placement, and hysterectomy, which serve as crucial exculpatory evidence against the false accusations made by the DEFENDANT, contradicting the alleged occurrences during the same period.

106. The medical records of PLAINTIFF'S surgeries and treatments substantiate her innocence, as they clearly demonstrate physical conditions and medical issues that make the alleged sexual activities, as described by Cory, implausible and medically impossible.

107. Private investigator Harry Schmidt interviewed multiple foster children with firsthand knowledge of the relationship between PLAINTIFF and Cory, revealing no evidence of foul play or inappropriate behavior.

CIVIL RIGHTS VIOLATIONS 42 U.S.C. SECTION 1983, 1985 COMPENSATORY RELIEFDECLARATORY RELIEFINJUNCTIVE RELIEF 12

108. Despite evidence proving PLAINTIFF'S innocence being brought to the attention of LAZAR, it was prejudicially ignored against PLAINTIFF.

109. The PLAINTIFF asserts that Detective Swank and LAZAR failed to conduct a thorough and impartial investigation into the witness testimonies and documented evidence that contradicted the allegations against her. Despite clear evidence of witness statements and records showing PLAINTIFF'S efforts to facilitate visits between Cory and his biological family, Detective Swank neglected to verify this crucial information.

110. During the investigation, Detective Swank interviewed Cory's biological mother, Sherry Courtwright, who made an unsupported statement claiming that the PLAINTIFF "never allowed Sherry to see Cory." However, this statement directly conflicts with well-documented evidence proving that PLAINTIFF facilitated multiple visits between Cory and his biological mother. The PLAINTIFF diligently recorded all visits on Pressley Ridge contact forms and mileage records, providing verifiable evidence of her efforts. PLAINTIFF believes Sherry is not a credible witness as she lost custody of all of her biological children due to neglect (seen at the bottom of EXHIBIT 9).

111. Similarly, Detective Swank interviewed Cory's sister, Nikki Balschmiter, who asserted that the PLAINTIFF never permitted Cory's family to visit him. The documented evidence, as presented above, unequivocally refutes Nikki's statements. The PLAINTIFF demonstrated a commitment to fostering a positive relationship between Cory and his family by organizing visits and ensuring their well-documented occurrence.

112. The negligence of Detective Swank and LAZAR to thoroughly investigate these discrepancies and to consider the substantial documented evidence casts doubt on the integrity and impartiality of the entire investigation. The PLAINTIFF contends that Detective Swank and LAZAR's omissions in the investigation deprived her of the opportunity to present critical evidence that could have exonerated her from the false allegations. This blatant lack of investigation by Detective Swank and LAZAR constitutes a violation of PLAINTIFF'S rights to due process and a fair trial.

113. PLAINTIFF'S lawyer sent an email dated 10/1/20, addressing the lack of follow-up from Det. Swank and LAZAR regarding the provision of discovery materials.

114. The email suggests that Det. Swank's health problems may have been the cause of this lack of follow-up and delay in providing necessary discovery materials to PLAINTIFF.

CIVIL RIGHTS VIOLATIONS 42 U.S.C. SECTION 1983, 1985 COMPENSATORY RELIEFDECLARATORY RELIEFINJUNCTIVE RELIEF 13

115. This incident is relevant to the claim of failure to provide discovery, which is a crucial aspect of due process in any legal proceeding.

116. Failure to provide timely and complete discovery materials can significantly hinder the PLAINTIFF'S ability to prepare an effective defense, resulting in a violation of their due process rights.

117. Det. Swank and LAZAR's failure to provide discovery obstructs the overall fairness and integrity of the legal process in this case.

118. The PLAINTIFF'S rights to due process were compromised due to the delay and lack of cooperation in providing essential discovery materials necessary for a fair trial.

## ALLEGATIONS AGAINST GREENE

119. These actions constitute a violation of PLAINTIFF'S Due Process rights, as the destruction of exculpatory evidence hindered her ability to present a fair defense.

120. PLAINTIFF presents evidence that contradicts the testimony of multiple GREENE CYS workers who claimed that PLAINTIFF denied GREENE County CYS visits in her home.

121. The email correspondence between the PLAINTIFF and GREENE County CYS demonstrates PLAINTIFF'S willingness to allow visitation and involvement of others in Cory's life (PLAINTIFF has multiple documented emails).

122. By highlighting the inconsistency between the GREENE County CYS workers' claims and the actual email evidence, PLAINTIFF is asserting a claim that false testimony and a conspiracy to deprive her of her rights occurred during the investigation and prosecution.

123. Additional information highlights another instance of potential misconduct and misrepresentation by Dusti Bedilion, a GREENE County CYS worker, during her interview with Det. Swank.

124. The affidavit of probable cause on 5/23/2017 indicates that Dusti claimed she was removed from Cory's case after the incident involving the defamatory statement. However, documentation reveals that Dusti was actually removed from Cory's case approximately 18 months before this incident took place.

CIVIL RIGHTS VIOLATIONS 42 U.S.C. SECTION 1983, 1985 COMPENSATORY RELIEFDECLARATORY RELIEFINJUNCTIVE RELIEF 14

125. This discrepancy in Dusti's statement raises concerns about her credibility and the accuracy of information provided during the investigation.

126. By making disingenuous statements, Dusti may have contributed to a violation of PLAINTIFF'S procedural due process rights, as her false statements could have influenced and tainted the investigation and decision-making process.

127. This adds to the overall claim of violation of procedural due process by highlighting potential misrepresentations made by Dusti Bedilion and their impact on the investigation and the PLAINTIFF'S rights.

128. There is additional information pertaining to Crystal Bennet's written note on 5/24/2012, detailing an incident between Cory and the PLAINTIFF during which they got into an argument.

129. According to Crystal's note, the PLAINTIFF asked Cory to leave during the argument, and when he refused, she mentioned calling the police. Crystal then took Cory for a walk, and upon returning, Cory packed his belongings and left the house.

130. Crystal's notes further indicate that the PLAINTIFF was upset and crying on the steps, expressing difficulty in making her child leave but acknowledging that it was best under the circumstances.

131. When interviewed by Det. Swank, Crystal gave a different version by presenting false statements and misrepresenting the events of that day, Crystal may have contributed to a violation of the PLAINTIFF'S procedural due process rights, as her statements could have influenced the investigation and the decision-making process.

132. This adds to the overall claim of violation of procedural due process by highlighting potential misrepresentations made by Crystal Bennet and their impact on the investigation and the PLAINTIFF'S rights.

133. The PLAINTIFF'S attorney, Bill McCabe, encountered significant obstacles while attempting to obtain crucial records from GREENE County CYS to aid in the defense. On 10/27/20, Attorney McCabe forwarded an email to GREENE County CYS requesting certain records specified in an order from Judge Feliciani

134. However, GREENE County CYS responded that they could not release the information directly to either party and that an in-camera review of the documents should occur before disbursement to either party.

CIVIL RIGHTS VIOLATIONS 42 U.S.C. SECTION 1983, 1985 COMPENSATORY RELIEFDECLARATORY RELIEFINJUNCTIVE RELIEF 15

Despite providing the judge's order, Attorney McCabe did not receive a response from GREENE County CYS, hindering PLAINTIFF'S access to vital evidence.

135. Faced with ongoing challenges in obtaining the necessary records, the PLAINTIFF'S attorney, on 2/23/21, sent another urgent request to GREENE County CYS, specifically addressing the records needed to build a robust defense. These records included monthly visit notes, individual service plans, insurance meetings, meetings from GREENE County MH/MR, mileage records for workers on the Cory Kuntz matter, SPLC hearing documents, records related to independent living, training, and visits, adoption profiles, IEP reports, case notes from all placements, medication reviews and checks, court orders, incident reports, and any reports sent from providers.

136. The failure of GREENE County CYS to promptly comply with the court's order and provide essential records directly to the PLAINTIFF'S legal team or the court for an in-camera review has significantly impeded the PLAINTIFF'S ability to present a comprehensive defense. This obstruction of access to critical evidence further supports PLAINTIFF'S claims of deprivation of rights and undermines the fairness and integrity of the legal proceedings.

137. These challenges faced in obtaining important records emphasize how this impediment affected PLAINTIFF'S ability to mount an effective defense and illustrates the hindrances the PLAINTIFF encountered in seeking justice and due process.

138. PLAINTIFF'S due process rights were violated, as GREENE County ordered that exculpatory evidence be shredded by Michelle Hysell, thus destroying evidence that would have further rebutted false caseworker statements and provided documentation of visits, safety checks, psychological reports, therapist notes, and other supporting evidence of innocence. (EXHIBIT 2)

## LAZARS DELIBERATE INDIFFERENCE

139. Moreover, LAZAR was notified multiple times of the numerous mental health professionals that were closely involved with Cory and PLAINTIFF'S interactions by the defense lawyers and PLAINTIFF who

CIVIL RIGHTS VIOLATIONS 42 U.S.C. SECTION 1983, 1985 COMPENSATORY RELIEFDECLARATORY RELIEFINJUNCTIVE RELIEF 16

1    also provided LAZAR with contact information for LAZAR to follow-up as demonstrated in two examples

2    of many in (EXHIBIT 6 and EXHIBIT 7).

3    140. LAZAR explicitly stated that he would pursue a conviction "in the honor of Detective Swank," implying a

4    biased approach and disregard for justice.

5    141. LAZAR failed to provide PLAINTIFF with reasonable and proper fair notice concerning a plea deal.

6    PLAINTIFF was coerced into entertaining the previous offer under fear of threats and undue pressure, only

7    for the plea arrangement to be suddenly changed without adequate notice.

8    142. LAZAR deliberately altered the plea agreement just 5 minutes before the hearing, leaving PLAINTIFF with

9    an unconscionable offer and insufficient time to make the most important decision of her life. This action

10    violated PLAINTIFF'S substantive and procedural due process rights.

11    143. Despite interviewing a total of 28 witnesses, it is evident that the credibility of the witness pool diminishes

12    significantly upon closer examination. Out of the initial 28 interviews, 5 were Cory's family members, and 5

13    were representatives from GREENE County CYS. These interviews, biased in nature, cannot be considered

14    reliable sources of information. This reduces the credible witness pool to 18.

15    144. Out of the remaining 18 witnesses, only 2 were directly involved with Cory before his placement in

16    the PLAINTIFF'S home, and their testimony is of limited relevance to the alleged incidents. This further

17    reduces the credible witness pool to 16.

18    145. Subsequently, an additional 3 interviews were conducted with former foster children placed in

19    the PLAINTIFF'S home, who unequivocally supported PLAINTIFF'S innocence, further reducing the

20    credible witness count to 13.

21    146. Out of the 13 remaining interviews, 3 were the PLAINTIFF'S daughter's teenage friends at the time of the

22    alleged incidents. Their statements align with PLAINTIFF'S innocence and report no signs of sexual abuse.

23    This narrows the credible witness count to 10.

24    147. Of the final 10 interviews, 2 were PLAINTIFF'S friends, whose testimonies provide further support for

25    the PLAINTIFF'S innocence. One of the remaining witnesses was the individual who shredded the GREENE

26    County file, undermining their credibility as a neutral observer. This leaves the credible witness count at 7.

27

28    CIVIL RIGHTS VIOLATIONS 42 U.S.C. SECTION 1983, 1985 COMPENSATORY RELIEFDECLARATORY
RELIEFINJUNCTIVE RELIEF 17

148. Upon careful examination, it becomes apparent that out of the 7 remaining witnesses, only 4 can be considered truly credible. Marnie Williams, the director of the Pressley Ridge foster care program, discredits Dusti's remarks and attests to Cory's lack of credibility and mental health issues. Nate, a teen at the time and a convicted felon, has discrepancies in his police report, further questioning the reliability of his testimony.

149. Ultimately, the case against the PLAINTIFF relies heavily on the testimonies of Trooper Reinhart, who has a close relationship with Detective Swank, and Cory, who faced felony charges for abusing a two-year-old and potentially had a motive for generating false accusations against the PLAINTIFF.

150. This significant lack of credible witnesses and reliance on questionable testimonies raises serious concerns about the integrity and impartiality of the investigation conducted by the Greensburg Police and LAZAR. The imbalance in witness interviews and the failure to explore the PLAINTIFF'S side of the story highlights the unfair treatment and deprivation of due process rights experienced by the PLAINTIFF throughout this entire ordeal.

151. LAZAR decided to proceed with the case against PLAINTIFF despite the lack of a proper investigation in his personal quest for conviction, using his official job capacity to personally benefit from the outcome of the prosecution of PLAINTIFF

152. LAZAR'S actions and omissions violated Article 1 Section 9 Clause 8 of the United States Constitution by using his official job capacity to gain advantage, profit, and gain in an unlawful emolument violation.

153. The facts and summary of his actions are that LAZAR added to his conviction percentage, add it to his résumé, the first woman convicted of minor rape, in the state of Pennsylvania, and gain personal notoriety in the public eyes.

154. PLAINTIFF was never questioned to discuss anything or present her "evidence" to show Cory's untruths. Swank and LAZAR never requested or interviewed Cory's therapists or mental health professionals that visited Cory in the PLAINTIFF's home weekly during his entire placement during the period in question. The PLAINTIFF actually asked Swank to interview her, and Swank said, "Okay, let's do it now," and the PLAINTIFF stated, "Great, call my lawyer, and let's speak." Swank said, "We don't do that." [Swank was

referring to calling the PLAINTIFF'S lawyer] The PLAINTIFF, therefore, left, as her right to have an attorney present during questioning was denied.

155. This significant lack of investigation and the failure to interview relevant witnesses raises serious concerns about the integrity and impartiality of the investigation conducted by LAZAR. The PLAINTIFF'S right to present her side of the story and evidence in her defense was systematically denied, highlighting the unfair treatment and deprivation of due process rights experienced by PLAINTIFF throughout this entire ordeal.

## H. CLAIMS
## CLAIM I DEPRIVATION OF RIGHTS

156. PLAINTIFF asserts all previous paragraphs and incorporates them herein. PLAINTIFF contends that defendant WESTMORELAND County has a duty to train all employees and establish policies to prevent and protect against constitutional violations of individuals within the scope of their responsibilities. This encompasses policy and the lack thereof.

157. PLAINTIFF was subjected to a bad faith prosecution, driven by the possibility of public humiliation, and prioritizing a conviction over a fair and thorough investigation.

158. In the 4 years, 7 months, and 6 days that the PLAINTIFF'S ordeal of the above took place (1664 days), Not one person was interviewed to explore the PLAINTIFF'S innocence, including the PLAINTIFF

159. In the 4 years, 7 months, and 6 days that the PLAINTIFF'S ordeal of the above took place (1664 days), Not one mental health professional that directly worked with Cory was interviewed, not even the ones that worked in PLAINTIFF'S home while Cory was placed in the PLAINTIFF'S home.

160. WESTMORELAND County policy and lack thereof has caused irreparable injury to PLAINTIFF and political subdivisions are statutorily liable to be soon as a person under 42 U.S.C. Section 1983.

161. LAZAR'S office is responsible for following constitutional provisions, including policy, and has qualified immunity in his official capacity, therefore, making WESTMORELAND County responsible for his actions.

162. WESTMORELAND is the proximate cause of injury in this count, and PLAINTIFF had a right not to be subjected to such unconstitutional practices, policies, customs, and procedures.

CIVIL RIGHTS VIOLATIONS 42 U.S.C. SECTION 1983, 1985 COMPENSATORY RELIEFDECLARATORY RELIEFINJUNCTIVE RELIEF 19

# I.  CLAIM II: DEPRIVATION OF RIGHTS
## DESTRUCTION OF EXCULPATORY EVIDENCE

163. PLAINTIFF asserts all previous paragraphs and incorporates them herein.

164. GREENE County has a duty to train employees and establish policies to prevent constitutional provisions, to be violated, and the people of the jurisdiction of GREENE County. Not only does this encompass the scope of policy, but also the lack thereof.

165. PLAINTIFF has become aware of a subcontractor hired by GREENE County CYS to shred documents, one of which was the personal file of Cory Kuntz at the time PLAINTIFF was being subjected to bad faith prosecution. (See again EXHIBIT 2) well, after the bad faith, a plea bargain was made

166. GREENE County CYS files were discovered to have been tampered with, destroyed, and concealed, which was not properly addressed by Det. Swank, resulting in interference with PLAINTIFF'S ability to have a fair trial.

167. Relevant documentation concerning GREENE County CYS visits to PLAINTIFF'S home was destroyed, impacting PLAINTIFF'S ability to present evidence in her defense.

168. The shredded file contained exculpatory evidence directly related to the primary accusation against PLAINTIFF and was a crucial exhibit to be used in PLAINTIFF'S defense.

169. There is additional comparable documentation that would confirm the highly exculpatory nature of the shredded evidence. PLAINTIFF maintained duplicate records that were given to all foster parents, including documentation of regular visits from GREENE County CYS.

170. GREENE County CYS provided inaccurate information during interviews with Detective Swank regarding PLAINTIFF'S cooperation and access to the home, which is contradicted by PLAINTIFF'S documented evidence.

171. Dusti Bedilion, Cory's former caseworker, falsely reported to Swank that she was removed from Cory's case due to reported suspected abuse, whereas PLAINTIFF has evidence showing that Dusti was removed from the case almost 18 months prior to making these statements.

172. The GREENE County CYS subordinate who ordered the shredding of Cory Kuntz's file acted with deliberate indifference, issuing an isolated order that amounts to bad-faith actions on behalf of GREENE County CYS.

CIVIL RIGHTS VIOLATIONS 42 U.S.C. SECTION 1983, 1985 COMPENSATORY RELIEFDECLARATORY RELIEFINJUNCTIVE RELIEF 20

173. These actions constitute a violation of PLAINTIFF'S Due Process rights, procedural and substantive, as the destruction of exculpatory evidence hindered her ability to present a fair defense.

174. PLAINTIFF asserts previous paragraphs and incorporates them herein.

175. GREENE is the proximate cause of injury in this count, and PLAINTIFF has a right not to be deprived of any of her due process protections pursuant to the state and federal constitutions.

## J. CLAIM III, DEPRIVATION OF RIGHTS

176. PLAINTIFF asserts all previous paragraphs and incorporates them herein. PLAINTIFF contends that defendant LAZAR has a fiduciary duty not to assert his personal influences and wishes upon a case.

177. PLAINTIFF was subjected to a bad faith prosecution in which was executed only with the possibility of public humiliation and primarily a conviction on the books of a female adult raping a minor verse the justice of a fair and full investigation.

178. LAZAR explicitly stated in the presence of the sitting judge and to PLAINTIFF'S lawyers when asked why these charges were not being dropped, he declared he would get a conviction "in the honor of Swank."

179. LAZAR was aware of the destruction of the exculpatory evidence and did not disclose this to PLAINTIFF.

180. LAZAR failed to give PLAINTIFF reasonable and proper fair notice concerning a plea deal. PLAINTIFF was previously entertaining the previous offer under fear of threat, alluding to a drawn out, highly publicized trial, then without notice the plea arrangement suddenly changed.

181. This came about by LAZAR offering PLAINTIFF a specific plea agreement and then 5 minutes before the hearing, changing said agreement into an unconscionable offer leaving only 5 min before the hearing to accept or reject the most important decision of her life. This was done deliberately with indifference violating substantive and procedural due process.

182. LAZAR personal bias toward the PLAINTIFF and sympathy of the death of Det. Swank combined with the notoriety of this high-profile conviction; LAZAR took it upon himself to deliberately deprive the PLAINTIFF of her due process rights and fair notice.

183. LAZAR is the proximate cause of injury.

CIVIL RIGHTS VIOLATIONS 42 U.S.C. SECTION 1983, 1985 COMPENSATORY RELIEFDECLARATORY RELIEFINJUNCTIVE RELIEF 21

## K. Prayer of Relief

Wherefore, PLAINTIFF seeks just and equitable relief to rectify the grave violations of her constitutional rights and to restore her dignity, reputation, and well-being. Accordingly, PLAINTIFF prays for the following relief:

a. Substantial Monetary Relief: PLAINTIFF seeks just compensation from the Counties, amounting to $500,000 each, for the egregious constitutional violations committed against her, as authorized by 18 U.S.C. 3571 (c) (3).

b. Monetary Relief Against LAZAR: PLAINTIFF demands fair restitution from LAZAR, totaling $250,000 for each constitutional violation, as per 18 U.S.C. 3571 (b) (3).

c. Compensation for Special Damages: PLAINTIFF seeks reparation for the special damages she has endured, which has caused financial, emotional, and personal hardships.

d. Punitive Damages: In order to deter any future misconduct of this nature, PLAINTIFF seeks punitive damages to be awarded against the defendants.

e. Declaratory Relief: PLAINTIFF requests that the Court issues a declaratory judgment, affirming the unlawful nature of the charges against her, and nullifying the probation imposed unjustly upon her.

 i. Removal of All Charges: PLAINTIFF demands the immediate removal of all charges brought against her, as they are based on a flawed and biased prosecution.

 ii. Termination of Probation: PLAINTIFF seeks the termination of her probation, which was unjustly imposed without proper consideration of her innocence.

Full Refund of Probational Costs: PLAINTIFF demands the reimbursement of all probational costs incurred, which resulted from a wrongful conviction.

f. Right to Amend Complaint: PLAINTIFF requests the right to amend this complaint should any further evidence or cause of action arise during the course of the litigation.

g. Recovery of Legal Fees: PLAINTIFF claims the rightful recovery of all legal fees paid, as a result of defending herself against the false accusations and unjust proceedings.

CIVIL RIGHTS VIOLATIONS 42 U.S.C. SECTION 1983, 1985 COMPENSATORY RELIEFDECLARATORY RELIEFINJUNCTIVE RELIEF 22

h. Any Further Relief as Deemed Appropriate: PLAINTIFF entreats the Court to grant any further relief it deems just and appropriate to rectify the harm inflicted upon her and to ensure justice is served.

In conclusion, PLAINTIFF ardently seeks reparation for the substantial injuries caused by the defendants' violations of her constitutional rights. May the Court render a righteous judgment and provide the redress she so rightfully deserves.

Respectfully submitted,

Joelle Barozzini, Ph.D.
Pro-Se

Dated this day of August 3, 2023.

Joelle Barozzini, Ph.D.

CIVIL RIGHTS VIOLATIONS 42 U.S.C. SECTION 1983, 1985 COMPENSATORY RELIEFDECLARATORY RELIEFINJUNCTIVE RELIEF 23

# CERTIFICATE OF SERVICE

Case Name: Barozzini vs. Westmoreland County, et al.

Case Number:   2:23 - cv - 1389

I,   Joelle Barozzini , hereby certify that on   8/3/2023  I served a true and correct copy of the Civil complaint including all attachments and exhibits, to the following parties via

X United States District Court

☐ Westmoreland County

☐ Greene County Counsel

☐ James Lazar

The aforementioned documents have been_____.

Served by ____Joelle Barozzini_____.

⠀⠀⠀⠀⠀Name

⠀⠀⠀⠀⠀_____

⠀⠀⠀⠀⠀Signature

⠀⠀⠀⠀⠀28 Morningside Drive, Greensburg, PA 15601

⠀⠀⠀⠀⠀Address